# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RICHARD KNAAK, individually and on behalf of all others similarly situated, | Case No.: 19-cv-1036 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| OPTIO SOLUTIONS, LLC d/b/a QUALIA COLLECTION SERVICES, | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Richard Knaak is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Optio Solutions, LLC d/b/a Qualia Collection Services ("QCS") is a debt collection agency with its principal offices located at 1444 North McDowell Blvd., Petaluma, CA 94954.

6. QCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. QCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. QCS is a "debt collector" as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about September 7, 2018, QCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Capital One, N.A.," which had an "Original Creditor" listed as "Chase Bank N.A.," and which was associated with a "Kohl's" store-branded credit card account. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt to which Exhibit A refers was incurred by use of a credit card which was used for only personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by QCS to attempt to collect alleged debts.

13. The header in Exhibit A contains the following:

**ACCOUNT SUMMARY**

| | |
|---|---|
| Original Creditor: | Chase Bank N.A. |
| Creditor: | Capital One N.A. |
| RE Your Kohl's Credit Card Account #: | ******7122 |
| Agency Account #: | 2879284 |
| Principal: | $1,628.06 |
| Fees: | $249.00 |
| Interest: | $271.24 |
| Balance Due: | $2,148.30 |
| Settlement Amount: | $1,074.15 |

14. Exhibit A states that the "Principal" is $1,628.06 and the "Balance Due" is $2,148.30, despite the fact that the letters are dated almost five months apart.

15. Exhibit A also states that the alleged debt had accrued "Interest" in the amount of "$271.24" and "Fees" in the amount of "$249.00."

16. By itemizing "Interest" and other "Fees, Exhibit A implies that there could be additional interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one."); *Duarte v. General Revenue Corp.*, No. 17-cv-2754, 2017 U.S. Dist. LEXIS 188441, at *7-8 (N.D. Ill. Nov. 15, 2017) ("With regard to costs, the balance statement says only that the 'current cost balance' is zero. The Court agrees with Duarte that this statement could plausibly imply that costs might accrue in the future, otherwise such a column would be unnecessary."); *Gaston v. Fin. Sys. of Toledo*, No. 3:18-cv-2652, 2019 U.S. Dist. LEXIS 86234, at *8 (N.D. Ohio May 22, 2019) ("it is plausible the itemization could mislead the least sophisticated consumer.").

17. As a district court in the Northern District of Illinois recently held:

> [B]y stating that fees and collection costs stood at "$0.00," instead of stating something like "N/A" or declining to mention fees and collection costs at all, the letter reasonably could be read to imply that such charges would begin to accrue if Wood did not pay the debt. Why, after all, would Allied include a column for fees and collection charges, and insert a dollar figure ($0.00), if not to suggest that such fees and costs might possibly accrue in the future?

*Wood v. Allied Interstate, LLC*, No. 17-cv-4921, 2018 U.S. Dist. LEXIS 98738, at *6 (N.D. Ill. June 13, 2018); *see also Lemke v. Escallate, LLC*, No. 17-cv-5234, 2019 U.S. Dist. LEXIS

3

45152, at *7-9 (N.D. Ill. Mar. 19, 2019); *Duarte v. Client Servs.*, No. 18-c-1227, 2019 U.S. Dist. LEXIS 53900, at *5-9 (N.D. Ill. Mar. 29, 2019).

18. On the face of Exhibit A, it is impossible to determine the amount that Defendant is attempting to collect because the letter is confusing as to whether the balance of the account is increasing as a result of interest and non-interest fees.

19. The unsophisticated consumer would be confused and misled as to whether the references to "Interest" and other "Fees" meant that the account was bearing interest and other fees, and thus may actually be greater than the balance stated in Exhibit A by the time the consumer actually received Exhibit A. *See, Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

20. Upon information and belief, QCS and/or the creditor does not actually add interest and costs to consumer collection accounts.

21. If the account is not actually bearing interest and fees, the references to "Interest" and "Fees" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest.

22. Exhibit A does not state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether Defendant was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

23. In the absence of an affirmative statement that the account was (or was not) bearing interest and non-interest fees, the ambiguous references to interest and non-interest fees could imply that interest and fees were accruing.

24. The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

4

25. The apparent contradiction and confusion inherent in itemizing the amounts is gratuitous. Had <u>Exhibit A</u> simply stated that interest and fees were not accruing, the letter would not create such gratuitous and unnecessary confusion. *Duarte*, 2017 U.S. Dist. LEXIS 188441, at *7-9; *Wood*, 2018 U.S. Dist. LEXIS 98738, at *6.

26. The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

27. Furthermore, there is no explanation in the letter as to what the non-interest "Fees" are or would be.

28. The unsophisticated consumer interprets references to "Fees" in collection letters, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

29. QCS and the creditor of Plaintiff's alleged debt, however, could not add any collection fees to Plaintiff's account.

30. As an unsecured consumer loan, the alleged debt referenced by <u>Exhibit A</u> is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

31. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-

5

end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

32. Plaintiff obtained the personal loan for the purpose of using the money to buy household goods and services. Plaintiff is a "customer," pursuant to Wis. Stat. § 421.301(17).

33. The creditor is thus a "merchant" because it routinely lends money to consumers like Plaintiff. Wis. Stat. § 421.301(25). Defendant is also a merchant because it claims to have taken assignment (at least for collection purposes) of that consumer loan, and is collecting on that loan on behalf of the original creditor or some assignee.

34. Plaintiff obtained money on credit from the original creditor. Wis. Stat. § 421.301(14).

35. Plaintiff's loan required Plaintiff to pay interest (i.e. a finance charge) to the original creditor or assignee, and the loan was payable in more than two installments. Wis. Stat. §§ 421.301(20)(a), 421.301(30).

36. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

37. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

6

38. Because personal loans, including Plaintiff's loan, are consumer credit transactions, the nebulous reference to non-interest "Fees" in Exhibit A falsely represents or implies that Defendant has a right to add collection fees to the debt.

39. Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit Defendant to add a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

40. Further, the alleged debt has been accelerated, and there are no late fees that could conceivably be added to Plaintiff's alleged debt. *E.g., Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-3656, 2018 U.S. Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated.") (citing *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003)).

41. Furthermore, the amounts itemized and "Interest" and other "Fees" by Exhibit A are additionally false, deceptive, and misleading.

42. Exhibit A states that the alleged debt had accrued "Interest" in the amount of "$271.24" and "Fees" in the amount of "$249.00."

43. On or around December 27, 2018, however, Plaintiff received a billing statement from the servicer of the credit card account associated with Plaintiff's alleged debt. A copy of this billing statement is attached to the complaint as Exhibit B.

44. Exhibit B includes the following representation:

| 2016 Totals Year-To-Date | |
|---|---|
| Total fees charged in 2016 | $210.00 |
| Total interest charged in 2016 | $381.15 |

45. Exhibit B thus states that in 2016 alone Plaintiff's alleged debt accrued $381.15 worth of interest.

46. Exhibit A therefore includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of Plaintiff's alleged debt, namely the amount of the debt which is attributable to interest.

47. Plaintiff read Exhibit A.

48. Plaintiff was confused and misled by Exhibit A.

49. The unsophisticated consumer would be confused and misled by Exhibit A.

50. Plaintiff had to spend time and money to investigate Exhibit A and the possible consequences of responding to Exhibit A.

51. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

*The FDCPA*

52. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3

(E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13

9

(N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

53. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

54. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such

10

an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

55. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

56. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

57. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

58. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

59. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

60. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

61. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

62. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

63. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

64. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

65. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

66. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

67. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

68. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

69. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Exhibit A contains contradictory and confusing account information.

72. Exhibit A falsely represents that the debt is accruing, can, or will, accrue "Interest" and "Fees" when, in fact, Defendant was not authorized to collect any post charge-off interest and there were no post charge-off charges and fees that could legally be collected.

73. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(8), and 1692e(10).

13

## COUNT II – WCA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Exhibit A falsely represents that the debt is accruing, can, or will, accrue "Interest" and "Fees" when, in fact, Defendant was not authorized to collect any post charge-off interest and there were no post charge-off charges and fees that could legally be collected.

76. Defendant violated Wis. Stat. 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. By itemizing an amount of "Interest" which was less than the amount of interest which actually accrued on Plaintiff's alleged debt, Exhibit A includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of such debt.

79. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of two Classes.

81. Class I ("Nationwide Class") consists of: (a) all natural persons in the United States, (b) who were sent a collection letter by Defendant in the form of Exhibit A, (c) in attempt to collect a debt incurred for personal, family, or household purposes, (d) between July 18, 2018 and July 18, 2019, inclusive, (h) and was not returned by the postal service.

82. Class II ("Statewide Class") consists of: (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Defendant in the form of Exhibit A, (c) in

attempt to collect a debt incurred for personal, family, or household purposes, (d) between July 18, 2018 and July 18, 2019, inclusive, (h) and was not returned by the postal service.

83. Each Class is so numerous that joinder is impracticable.

84. Upon information and belief, there are more than 50 members of each Class.

85. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

86. Plaintiff's claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

87. Plaintiff will fairly and adequately represent the interests of the members of each Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

88. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

89. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 18, 2019

                                  **ADEMI & O'REILLY, LLP**

            By:    /s/ Mark A. Eldridge
                    John D. Blythin (SBN 1046105)
                    Mark A. Eldridge (SBN 1089944)
                    Jesse Fruchter (SBN 1097673)
                    Ben J. Slatky (SBN 1106892)
                    3620 East Layton Avenue
                    Cudahy, WI 53110
                    (414) 482-8000
                    (414) 482-8001 (fax)
                    jblythin@ademilaw.com
                    meldridge@ademilaw.com
                    jfruchter@ademilaw.com
                    bslatky@ademilaw.com